# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**KATHLEEN MARIE BISBEE,**

    **Plaintiff,**

v.                                                                                                               No. 18-cv-0731 SMV

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], filed on December 7, 2018. The Commissioner responded on January 30, 2019. [Doc. 19]. Plaintiff replied on February 27, 2019. [Doc. 20]. The parties have consented to my entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Appeals Council erred in failing to consider the report of Eligio R. Padilla, Ph.D. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (2018) (sentence four).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2019).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff was born on November 22, 1970. Tr. 62. Her date-last-insured was June 30, 2017. Tr. 29. She alleges that she cannot work due to a combination of mental and physical problems. [Doc. 17] at 1. On July 1, 2014, Plaintiff applied for disability, disability insurance benefits, and supplemental security income. Tr. 27. Plaintiff alleged a disability-onset date of February 27, 2012, the date Plaintiff suffered injuries as a result of a car crash. *Id.*; [Doc. 17] at 7.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

ALJ James Bentley held a hearing on June 1, 2017, in Albuquerque, New Mexico.[2] Tr. 27. Plaintiff appeared in person at the hearing with her attorney. Tr. 46. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"). *Id.*

The ALJ issued his partially favorable decision on June 30, 2017. Tr. 27–38. He found that Plaintiff was disabled beginning on January 18, 2017, but was not disabled prior to that date. Tr. 37–38. At step one, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 29. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease, obesity, history of plantar fasciitis, degenerative joint disease of the bilateral knees, sciatica, and bilateral carpal tunnel syndrome." *Id.* The ALJ also found that Plaintiff's anxiety, depression, and shoulder pain were not severe. Tr. 29–30.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 30–31. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 31–35. The ALJ found that, prior to January 17, 2017,[3] Plaintiff

> had the [RFC] to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except she was unable to climb ladders, ropes, and scaffolds; she could occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs; she could frequently, but not constantly, handle and finger bilaterally; and she required a sit-stand option, defined as a brief positional change form [sic] sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the work station so as not to diminish pace of production.

---

[2] Though the hearing transcript states that the hearing occurred in McAlester, Oklahoma, Tr. 44, the ALJ's decision and Plaintiff's Motion both state it occurred in Albuquerque. Tr. 27; [Doc. 17] at 1–2, 1 n.1.

[3] It is not apparent based on the record why the ALJ switched the onset date from January 17, 2017, when assessing Plaintiff's RFC to January 18, 2017, when later concluding that Plaintiff was only disabled beginning on that date. *See* Tr. 31, 34, 36.

Tr. 31. The ALJ then found that, beginning on January 17, 2017, Plaintiff

> has the [RFC] to perform sedentary work, as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except she is unable to climb ladders, ropes, and scaffolds; she can occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs; she can frequently, but not constantly, handle and finger bilaterally; and she requires a sit-stand option, defined as a brief positional change form [sic] sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the work station so as not to diminish pace of production. In addition, the claimant requires three additional unscheduled 10-minute work breaks per workday due to back pain.

Tr. 34–35.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as a housekeeper, security guard, or inventory clerk. Tr. 35–36. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 36–37. He found that, prior to January 18, 2017, Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* He also found that, beginning on January 18, 2017, Plaintiff could perform no work that exists in significant numbers in the national economy and, therefore, was disabled as of that date. Tr. 37.

Plaintiff requested review from the Appeals Council. Tr. 1–2. She was evaluated by Dr. Eligio Padilla on September 11, 2017. [Doc. 15-1] at 1. Dr. Padilla issued his report on December 7, 2017. *Id.* Plaintiff asked the Appeals Council to consider the report. *See* Tr. 2. The Appeals Council refused to consider the report based on a finding that the report "[did] not show a reasonable probability that it would change the outcome." *Id.* The Appeals Council denied Plaintiff's request for review on June 7, 2018. Tr. 1–3. Plaintiff timely filed the instant action on July 31, 2018. [Doc. 1].

4

**Discussion**

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to de novo review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). Additional evidence should be considered only if it is new, material, and chronologically pertinent. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[4] Evidence is new "if it is not duplicative or cumulative" and material "if there is a reasonable *possibility*[5] that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191 (alteration in original) (emphasis added) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ, i.e., the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).[6]

---

[4] The Social Security Administration updated these two regulations on December 16, 2016, stating that the changes were effective on January 17, 2017, and compliance was not required until May 1, 2017. 81 Fed. Reg. 90,987 (Dec. 16, 2016). The Appeals Council applied the new regulations here in its June 7, 2018, decision. *See* Tr. at 1–2. As most courts apply the new regulations to decisions issued by Appeals Council after the compliance date of May 1, 2017, the Court applies the new regulations here. *See McIntyre v. Berryhill*, No. 17-14347-CIV-MAYNARD, 2018 WL 5621483, at *6 (S.D. Fla. Oct. 30, 2018); *Jones v. Berryhill*, No. 1:17CV703, 2018 WL 3849914, at *6 (M.D.N.C. Aug. 13, 2018); *Stepp v. Berryhill*, C/A No. 1:17-771-MBS-SVH, 2017 WL 6806664, at *16 n.12 (D.S.C. Dec. 6, 2017); *see also Jerika C. v. Comm'r of Soc. Sec.*, Civil Action No. 3:17-cv-00070, 2019 WL 320623, at *4 n.6 (W.D. Va. Jan. 4, 2019) (stating the new rules apply to cases *pending* before the Appeals Council after the compliance date). *But see Potter v. Berryhill*, CIVIL ACTION No. 17-4050-JWL, 2018 WL 4052205, at *5–6 (D. Kan. Aug. 24, 2018) (declining to apply the new rules to an Appeals Council decision made after their promulgation because the rules were not in place at the time of the final decision of the ALJ). Moreover, the Commissioner argues explicitly that the new regulations apply to this case, [Doc. 19] at 13, and Plaintiff does not argue otherwise. *See* [Doc. 17].

[5] The newest versions of §§ 404.970(a)(5) and 416.1470(a)(5) add a fourth requirement: that "there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. §§404.970(a)(5), 416.1470(a)(5) (emphasis added). This requirement heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable *possibility* of changing the outcome, now it requires a reasonable *probability* of changing the outcome. *See Hawks v. Berryhill*, No. 1:17CV1021, 2018 WL 6728037, at *4 & n.5 (M.D.N.C. Dec. 21, 2018).

[6] Though the newest versions of §§ 404.970 and 416.1470 require a claimant to show good cause for her failure to present this new evidence earlier, *see* 20 C.F.R. §§ 404.970(b), 416.1470(b), the Appeals Council did not exclude the report because Plaintiff lacked good cause, and the Commissioner does not dispute that good cause exists here. *See* Tr. 2; [Doc. 19] at 13–15.

If the Appeals Council fails to consider qualifying new evidence, the case should be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the complete evidence. *Threet*, 353 F.3d at 1191. However, if the evidence submitted to the Appeals Council does not qualify, then the Appeals Council does not consider it, and it "plays no role in judicial review." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

Plaintiff claims that Dr. Padilla's report is new, material, and chronologically pertinent evidence, and that it would have probably changed the ALJ's decision that she was not disabled between the 2012 car crash and January 18, 2017. [Doc. 17] at 11–18. The Commissioner argues that the report is neither material nor chronologically pertinent. *See* [Doc. 19] at 13–15. For the following reasons, the Court agrees with Plaintiff and will remand the case to the Appeals Council.

**1. Dr. Padilla's report**

Dr. Padilla evaluated Plaintiff on September 11, 2017. [Doc. 15-1] at 1. He administered a Beck Depression Inventory-II test, and Plaintiff received a score of 31 out of 63, "which is consistent with major depression." *Id.* at 4. He gave her a GAF[7] score of 45, *id.* at 8, which indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *Am Psychiatric Ass'n*, *supra*, at 34 (emphases in original).

Though Dr. Padilla found that Plaintiff "is functioning cognitively in the average range of intellectual abilities," he diagnosed her with Major Depressive Disorder, Recurrent, Moderate. *Id.* at 8. He reported, "It is the professional opinion of this examiner that her depression and anxiety

---

[7] A Global Assessment of Functions (or "GAF" score) is a clinician's determination on a scale of 1 to 100 of an individual's overall level of functioning. *Am Psychiatric Ass'n*, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2010).

emerged in 2012 when she began to experience the consequences of a very serious car accident and began to comprehend how much her future would be altered by this horrific event." *Id.* He also reported that she "can manage benefits in her best interests, despite her depression, secondary symptoms of anxiety, chronic pain and chronic fatigue." *Id.* Though he stated that Plaintiff's "ability to understand and remember basic instructions is not impaired," *id.* at 9, Dr. Padilla found a moderate impairment of Plaintiff's ability to understand and remember more complex, multistep instructions. *Id.* He found a moderate-to-marked impairment of her ability to interact with the general public, coworkers, and supervisors. *Id.* He found marked impairments in two areas:

- her ability to concentrate and persist at tasks of basic work; and
- her ability to adapt to changes in the workplace.

*Id.* Finally, Dr. Padilla made findings which, if accepted by an ALJ, would meet the criteria for Listing 12.04, Affective Disorder. *See id.* at 12.

### 2. The report is new evidence.

Neither party disputes that Dr. Padilla's report is new. Because Plaintiff did not present it to the ALJ, and it is not duplicative or cumulative of the evidence about Plaintiff's psychological limitations, Dr. Padilla's report represents new evidence. *See* [Doc. 15-1].

### 3. The report is material.

Dr. Padilla's report is material. The ALJ declined to classify Plaintiff's depression and anxiety as severe impairments because she presented little evidence of mental health treatment and she had close friends and a supportive husband. Tr. 30. He stated that even if she had some psychological impairments, "there is no evidence or testimony suggesting [she] has more than mild limitations in understanding, remembering, or applying information; interacting with others;

7

concentrating, persisting, or maintaining pace; or in adapting or managing oneself." *Id.* He concluded that "the claimant's anxiety and depression are only slight abnormalities that do[] not cause more than minimal limitations in the claimant's ability to perform basic work activities." *Id.* Moreover, the ALJ included no restrictions on mental functioning in the RFC. Tr. 31. Dr. Padilla, however, found *marked* impairments in areas critical for unskilled[8] work, including her ability to adapt to changes in the workplace. [Doc. 15-1] at 9; *see* Social Sec. Admin., DI § 25020.010(B)(3)(m), Program Operations Manual System (POMS), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited March 5, 2019). He also found *moderate* or *moderate-to-marked* impairments in other important areas, such as understanding and remembering complex, multistep instructions and interacting with the general public, coworkers, and supervisors. [Doc. 15-1] at 10. This report contradicts the ALJ's finding that she had only mild limitations in the above areas and that she had only minimal limitations in her mental abilities to work.

The Commissioner argues that Dr. Padilla's report would not change the outcome—and therefore is not material—because (1) the ALJ found that Plaintiff was not disabled before January 18, 2017, based on a "similar opinion about non-exertional limitations from Dr. Otero-Lopez" and (2) even with the alleged psychological limitations found by Dr. Padilla, Plaintiff could still perform the unskilled jobs identified by the ALJ at step five. [Doc. 19] at 14–15. Each argument is without merit. Dr. Otero-Lopez's opinion differs from Dr. Padilla's in two

---

[8] The ALJ classified each job listed at step five—a food and beverage clerk, a charge account clerk, and a document preparer—as "a sedentary SVP 2 position." Tr. 37. Because all SVP 2 positions are unskilled, the ALJ limited his analysis at step five to unskilled work. *See* Soc. Sec. Admin., SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000) ("[U]nskilled work corresponds to an SVP of 1–2 . . . .").

8

crucial manners. First, Dr. Otero-Lopez did not conclude—as Dr. Padilla did—that Plaintiff's impairments are severe enough to meet a Listing. Second, Dr. Otero-Lopez only found two marked impairments: Plaintiff's ability to maintain *physical* effort for long periods without rest and her ability to complete a normal workday without interruption from *pain- or fatigue-based* symptoms. Tr. 681. These impairments, however, do not concern Plaintiff's *psychological* symptoms, which Dr. Padilla analyzed. Dr. Padilla found the presence of four moderate or marked impairments in Plaintiff's psychological abilities while Dr. Otero-Lopez found only three moderate or marked impairments in Plaintiff's physical abilities. Dr. Padilla therefore analyzed a different issue and found more restrictions than Dr. Otero-Lopez.

If the ALJ's RFC included the psychological impairments outlined by Dr. Padilla, Plaintiff could not perform the unskilled jobs identified at step five. The ALJ found that, prior to January 18, 2017, Plaintiff could have worked as a food and beverage clerk, charge account clerk, or document preparer, all sedentary positions. Tr. 37. The psychological limitations described by Dr. Padilla, however, question her ability to perform any of those jobs. In fact, if the ALJ adopted the impairments outlined by Dr. Padilla, Plaintiff would have a marked limitation in her ability to adapt to changes in the workplace, which, according to the POMS, is a mental ability critical for performing unskilled work. *See* Social Sec. Admin., DI § 25020.010(B)(2).[9] The Court rejects the Commissioner's argument that Plaintiff, with the limitations listed by Dr. Padilla, could

---

[9] Dr. Padilla also states that Plaintiff has a moderate-to-marked impairment in Plaintiff's ability to interact with the general public, coworkers, and supervisors. [Doc. 15-1] at 9. Though Plaintiff's inability to adapt to changes in the workplace is sufficient to find that Plaintiff could not perform any jobs used by the ALJ, this impairment is likely similar enough to the ability to "get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes" that it also prevents Plaintiff from performing those jobs. Social Sec. Admin., *supra*, DI § 25020.010(B)(3)(*l*).

perform the jobs identified at step five. Dr. Padilla's report has a reasonable probability of changing the outcome and is therefore material.

### 4. The report is chronologically pertinent.

The Commissioner's arguments rely on trivial, semantic details in Dr. Padilla's report. For example, the Commissioner argues that the report is not chronologically pertinent because Dr. Padilla wrote that Plaintiff's depression and anxiety "emerged" or "began" in 2012 but did not expressly state that the psychological problems continued through January 18, 2017. [Doc. 19] at 14 (quoting [Doc. 15-1] at 8); *see id.* (questioning his report because he used the present tense when describing Plaintiff's limitations). The Court disagrees. Dr. Padilla's statement that Plaintiff's depression and anxiety "began" or "emerged" after the 2012 car accident, coupled with his statement that she still suffered from their symptoms at the time of the report, indicates that Plaintiff suffered from her psychological limitations after her accident through the time of her evaluation. He concluded that her psychological problems began after the 2012 car crash. [Doc. 15-1] at 8. His opinion therefore relates to the time period adjudicated by the ALJ. *See Rivera v. Colvin*, No. 15-cv-0593 WPL, 2016 WL 9819512, at *5 (D.N.M. Oct. 18, 2016) (holding that an examiner's use of the present tense does not preclude a report from being chronologically pertinent if there is language retroactively applying the claimant's present limitations to the chronologically pertinent time period).

Dr. Padilla's report is new, material, and chronologically pertinent evidence. There is a reasonable probability that it would change the outcome. Because the Appeals Council improperly declined to consider it, the Court must remand the case to allow the Appeals Council the first

opportunity to evaluate the ALJ's decision in light of the complete record. *See Chambers*, 389 F.3d at 1143; *Threet*, 353 F.3d at 1191.

## Conclusion

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**